IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 1, 2018 Session

## MCARTHUR BOBO v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 08-02588        John Wheeler Campbell, Judge

_____

No. W2017-00681-CCA-R3-PC

_____

The Petitioner, McArthur Bobo, appeals the post-conviction court's denial of his petition for post-conviction relief, arguing that he was deprived of his right to a full and complete hearing on his motion for new trial because the trial court confused his case with another case, that he received ineffective assistance of trial and appellate counsel, and that his due process rights were violated by the fact that he never received the statement of a key witness. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, McArthur Bobo.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Danielle McCollum and Neal Oldham, Assistants District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS and PROCEDURAL HISTORY

In 2011, the Petitioner was convicted by a Shelby County Criminal Court jury of second degree murder, a Class A felony, and sentenced by the trial court as a career offender to sixty years at 100% in the Department of Correction. His conviction was affirmed by this court on direct appeal, and our supreme court dismissed his application

for permission to appeal as untimely. State v. McArthur Bobo, No. W2009-02565-CCA-R3-CD, 2011 WL 2464207, at *1 (Tenn. Crim. App. June 21, 2011), perm. app. dismissed (Tenn. Sept. 12, 2011), perm. app. dismissed (Tenn. July 14, 2014).

Our direct appeal opinion provides the following synopsis of the facts in the case:

This case arises out of the [Petitioner's] December 23, 2007 shooting of Michael Gibbs, which resulted in the victim's death. According to the State's proof at trial, the [Petitioner] had been in a fight with another man at the victim's apartment complex approximately two days before the shooting. Therefore, when the [Petitioner] came to the apartment complex on the evening of December 23, 2007 and stood outside an apartment where a birthday party was about to take place, the victim approached him and told him that he was a troublemaker and that the residents of the complex did not want him there. As the victim turned to walk away, the [Petitioner] mumbled a response. When the victim turned back around to ask the [Petitioner] what he had said, the [Petitioner] pulled a gun out of his jacket and fired at the victim's feet. The victim ran in an attempt to escape, but the [Petitioner] pursued and fired either two or three additional shots at the victim before fleeing, leaving the victim to die at the scene.

Id.

The Petitioner raised three evidentiary issues on direct appeal: whether his Fifth Amendment and due process rights were violated by the State's use of a recorded jail conversation to impeach the Petitioner's sister's claim that she had not recently discussed her proposed trial testimony with the Petitioner; whether the trial court erred by denying the Petitioner's motion to suppress photographic identifications of him as the shooter; and whether the trial court erred by allowing a witness to testify that the victim's children were visiting him on the night of the shooting. Id. at *1-2. We concluded that the photographic identification evidence was waived by the Petitioner's failure to include in the appellate record either the order of the trial court denying the motion or the transcript of the suppression hearing. Additionally, we concluded that the other two issues were waived due to the Petitioner's failure to include them in the motion for new trial. Id. at *2-3. With respect to the impeachment issue, we further concluded that plain error review was not warranted because no substantial rights of the Petitioner were affected by the introduction of the evidence. Id. at *2.

The Petitioner subsequently filed a pro se petition for post-conviction relief in which he, apparently, raised an ineffective assistance of counsel claim based on appellate counsel's failure to file a timely Rule 11 application for permission to appeal. On June 7,

- 2 -

2013, the post-conviction court entered an order staying the post-conviction proceedings and granting the Petitioner permission to file a delayed Rule 11 application. The Petitioner filed his Rule 11 application on March 21, 2014, after the expiration of the ninety-day time limit. On April 22, 2014, our supreme court entered a show cause order for the Petitioner to show why the court should not dismiss the application as untimely. The Petitioner filed a "Petition for Acceptance of Late Filed Rule 11 Application for Permission to Appeal" on May 12, 2014, and on July 14, 2014, our supreme court entered an order dismissing the application for permission to appeal as untimely.

On November 26, 2014, the Petitioner filed a pro se petition for post-conviction relief in which he raised a claim of ineffective assistance of trial and appellate counsel. Following the appointment of post-conviction counsel, on April 30, 2015, he filed a "Second Amended Petition"[1] for post-conviction relief in which he alleged that trial counsel was ineffective for, among other things: not requesting a mistrial when the State failed to produce the witness statement of Kenya Samuels, or, at a minimum, not requesting that her testimony be stricken from the record; not raising as issues in the motion for new trial the State's failure to produce Ms. Samuels' witness statement, the introduction of the prejudicial recorded jail telephone conversation between the Petitioner and his sister, or the admission of the prejudicial testimony about the presence of the victim's children in the victim's home at the time of the shooting; and not objecting when the trial court confused the Petitioner's case with the facts of another case at the motion for new trial hearing. The Petitioner alleged that appellate counsel was ineffective for failing to include the transcript of the suppression hearing in the record on appeal. Finally, the Petitioner alleged that his due process rights were violated by the fact that his motion for new trial was not heard and determined on the facts of his case, as evidenced by the trial court's erroneous recitation of the facts at the hearing.

On November 20, 2015, the post-conviction court, after a hearing, entered a written order denying the portion of the petition based on the Petitioner's allegation that he was deprived of his right to a motion for new trial. In its oral ruling, the court found that the trial judge "got confused on some facts," but that it was not "tantamount to [the] denial of [a] motion for new trial." The court observed that the purpose of a motion for

[1] In the "Second Amended Petition," the Petitioner incorporates by reference the claims contained in his first amended petition, which he states was filed by prior post-conviction counsel on May 22, 2012. The first amended petition for post-conviction relief is not included in the record on appeal. One of the claims raised in that petition was, apparently, that appellate counsel was ineffective for not asking for a motion to rehear after this court found that two of the issues were waived for failure to be included in the motion for new trial when the issues were in fact raised and argued in the motion for new trial.

new trial is to allow the trial court the opportunity to correct any errors before the case is appealed. The court also observed that the issues had been raised and reviewed before the Court of Criminal Appeals. The court's ruling states in pertinent part:

> In this particular case even though there was apparently and I think the judge just got confused, I don't think he forgot about the case, I just think he got confused on some facts, I do not see this as being tantamount to denial of motion for new trial. All the other issues were heard by the judge and denied. And then every issue went up before the Court of Criminal Appeals and had a full hearing on that.
>
> . . . .
>
> In this particular case the Court of Criminal Appeals reviewed everything and found no errors. So the way I'm looking at this is that if there was any problem with the motion for new trial, then this is something that can be raised in the petition for post-conviction relief in regards to representation by counsel . . . .

On July 7, 2016, the Petitioner filed a motion to compel in which he sought the production by the State of certain evidence including the written statement of Kenya Samuels to the Memphis Police Department. At a July 15, 2016 hearing, the prosecutor announced that the State had done its best to comply with the motion but that there was no indication in the State's files that Ms. Samuels ever gave a statement. The prosecutor conceded that the witness mentioned during her trial testimony that she had given a statement and that no announcement was made on the record that there was, in fact, no statement. However, he said that he had double checked the record and been unable to find any statement by the witness. Post-conviction counsel acknowledged that the State could not be compelled to produce something that it did not have but maintained his position that there had been a statement that the Petitioner never received.

On January 27, 2017, the post-conviction court held an evidentiary hearing on the remaining claims raised in the petition for post-conviction relief. We will summarize only those portions of the evidentiary hearing testimony that are pertinent to the issues the Petitioner raises on appeal.

Trial counsel testified that he and the Petitioner discussed the facts of the case many times and that their defense theory consisted of relying on the Petitioner's sister, and perhaps his mother, to establish an alibi. He recalled that Kenya Samuels, an eyewitness to the shooting, was a witness for the State at trial but could not recall her testimony. He did, however, remember that there was "a question about whether [he] had

- 4 -

been given [her] prior statement to police." To the best of his recollection, he had received one written statement of hers. He recalled that he vigorously cross-examined her, causing her to become confused, and that she indicated that she had given a prior statement to police. Trial counsel explained that he later learned from the prosecutor that Ms. Samuels had talked to the police on the night of the shooting but had been so hysterical that they made no attempt to take a statement from her:

> Q. So had you received a written statement regarding Kenya Samuels?
>
> A. This is what happened to the best of my memory, and the record should show this. When I cross-examined her, she had been a hostile witness for us and my cross-examination was vigorous of her. And frankly, I think I got her confused. What happened was that she was on the scene that night and she was a witness, an eyewitness. So when she went initially to the police station that night, she was so hysterical that they couldn't get a statement from her. And so she went back the next day and gave a formal statement.
>
> Well on cross-examination I asked her did you talk to the police that night and she said yes. So at that point I stopped the proceeding and I said where is the other statement. Then my memory of this is the prosecutors went back and talked with the police and that's when they found out that they didn't take a statement. She may have spoken to them like hello and yes, I was there and she was hysterical but she didn't give a written statement, an additional written statement.
>
> Q. Okay. So when you say not an additional written statement, it's your understanding she gave one written statement but not a second written statement?
>
> A. Correct. That's my memory of that event.

To the best of trial counsel's recollection, it was at a later date that he learned from the prosecutors that Ms. Samuels had been too hysterical to give a statement on the night she first spoke with the police. He said he had reviewed his file of the case approximately six months earlier, but only to verify that he had raised in the motion for new trial the issues that the appellate court found in the direct appeal to be waived for failure to be included in the motion for new trial.

The Petitioner testified that he believed he did not receive a fair trial because he never received any witness statement of Kenya Samuels. He said they "received nothing on her, no type of statement, no type of existence of Kenya Samuels, period." According to his testimony, the only thing he ever received with respect to Kenya Samuels was the transcript of her preliminary hearing testimony. The Petitioner stated that in the preliminary hearing, Ms. Samuels answered "no" to the question of whether she ever gave any kind of written statement. However, when she was cross-examined at his trial, she said that she gave a statement to the police two days after the shooting. The Petitioner recalled that when trial counsel raised an objection at trial, the prosecutor informed him and the trial judge that the witness had never given a written statement to police:

> So when the witness came up here and got on the stand, Ms. Kenya Samuels, [trial counsel] did ask for Jencks material when she got up there because he was shocked like who is her? We don't even - - we ain't got nothing on her. She just showing up out of the blue, you see what I'm saying. And when she got up here, the State - - the prosecutor for the State . . . had a confrontation. [The prosecutor's] answer was the only statement that we got on Ms. Kenya Samuels is her preliminary hearing statement. She did not make a statement to the police, period. This before the witness was even swore in and sat down, you see what I'm saying, right here in the trial. As the trial went on she was asked did you give any kind of statement. She said yes, two days later prior [sic]. Where the statement at? I didn't never get a chance to cross-examine her properly. I never got a chance to ask her anything that could have helped me as far as impeachment purposes, period.

The Petitioner testified that trial counsel's testimony at the post-conviction hearing indicated to him that the witness had given a written statement. He said that trial counsel did not request a mistrial or that Ms. Samuels' testimony be stricken due to the State's failure to provide him with her statement, as he could have pursuant to Tennessee Rule of Criminal Procedure 26.2. The Petitioner also complained that trial counsel never raised in the motion for new trial the State's failure to provide Kenya Samuels' statement.

The Petitioner testified that his appellate counsel failed to timely file his Rule 11 application for permission to appeal to our supreme court, which resulted in the dismissal of the application as time-barred. He said that appellate counsel acknowledged his responsibility for that failure as well as for his failure to file the transcript of the suppression hearing, which resulted in the waiver of that issue on direct appeal.

The Petitioner also complained that his Fifth Amendment right not to incriminate himself was violated by the State's playing of his voice on the recorded jail conversation with this sister. In addition, neither he nor his counsel had any knowledge that the tape existed until the time of trial. He acknowledged that trial counsel objected to the tape recording at trial and included it as an issue in the motion for new trial, but the appellate court found it waived for failure to be included in the motion for new trial.

Appellate counsel testified that he represented the Petitioner on direct appeal. He identified a letter to the Petitioner, which was admitted as an exhibit, in which he accepted responsibility for not properly certifying the transcript of the hearing on the motion to suppress the photographic identifications. In response to questions by the post-conviction court, appellate counsel testified that the Petitioner's appeal was the first one he had ever handled and that he filed the trial transcripts but neglected to include the transcript of the suppression hearing.

On March 3, 2017, the post-conviction court entered a written order dismissing the petition. Among other things, the court found that that the Petitioner had not met his burden of demonstrating that his trial counsel was deficient in representation or that any alleged deficiency resulted in prejudice to his case. The court found that appellate counsel was deficient for failing to properly prepare the record, resulting in the waiver of the suppression issue on appeal. The court further found, however, that the Petitioner failed to meet the prejudice prong by failing to show a reasonable probability that he would have been successful on that issue. Finally, the court found that this court was mistaken in concluding that the two remaining issues on direct appeal were waived for failure to be included in the motion for new trial, noting that both issues were clearly included in the motion for new trial and ruled on by the trial court at the hearing on the motion for new trial. The post-conviction court concluded, however, that based on the record and the ruling of the trial court, "it [did] not appear that either issue would create a reasonable probability that the appeal would have been successful."

## ANALYSIS

The Petitioner raises three issues on appeal: (1) whether the post-conviction court erred in concluding that the Petitioner was not deprived of his right to have a motion for new trial heard in his case; (2) whether the post-conviction court erred in concluding that he received effective assistance of trial and appellate counsel; and (3) whether his due process rights to a fair trial were violated by the State's failure to produce the witness statement of Kenya Samuels.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary

- 7 -

hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## I. Motion for New Trial

The Petitioner first contends that the post-conviction court erred in concluding that he was not deprived of his right to a motion for new trial. He argues that that the post-conviction court was wrong in concluding that all his issues were addressed by the trial court, asserting that the trial court may have analyzed the issues raised in the motion for new trial, but that it analyzed them under the facts of a completely different case. He further argues that the record does not support the post-conviction court's finding that all the issues went up to the court of criminal appeals and that a "full hearing" occurred on the issues because the court of criminal appeals concluded that the issues were waived.

The State responds by arguing that the Petitioner has no standalone claim for post-conviction relief based on the incompleteness of the appellate record and should instead have raised the issue during his direct appeal. The State similarly argues that the Petitioner's claim that the trial court relied on facts from another case in overruling his motion for new trial should have been raised as an issue in either the trial court or on direct appeal, and is not cognizable in a post-conviction proceeding. The State additionally argues that the transcript of the motion for new trial hearing shows that the trial court considered and appropriately ruled on each of the Petitioner's thirteen issues in the motion for new trial hearing, even if it misremembered some of the facts of the case.

The transcript of the motion for new trial reveals that the trial court confused the facts of the Petitioner's case, in which the victim's children had been present in the victim's home, with another case in which a defendant shot into a van that had children in it. Trial counsel did not, however, correct the trial court's mistake at the hearing, no doubt due to the fact that it most certainly would not have altered the ruling of the court. We agree with the State that any objection the Petitioner had to the trial court's mistake should have been raised before the trial court itself, or on direct appeal.

We further agree with the State and the post-conviction court that the trial court's "misremembering" of some of the facts does not equate to the Petitioner's not having had his motion for new trial heard by the trial court. It is clear from the record that the trial court held a hearing on the Petitioner's motion for new trial, at which it addressed each of the issues raised. The Petitioner is not entitled to post-conviction relief on the basis of this claim.

## II. Ineffective Assistance of Counsel

### A. Trial Counsel

The Petitioner contends that trial counsel was deficient in his performance, thereby prejudicing the outcome of his case, for not objecting to the trial court's mistake of facts during the hearing on the motion for new trial, for not either moving for a mistrial or requesting that the testimony of Ms. Samuels be stricken based on the State's failure to provide the Petitioner with her written statement, and for not raising the State's failure to provide the written statement as an issue in the motion for new trial.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a

"probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The same principles apply in determining the effectiveness of trial and appellate counsel. See Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

With respect to these allegations, the post-conviction court found that the Petitioner failed to show any deficiency on trial counsel's part or any resulting prejudice to his case. The record supports the findings and conclusions of the post-conviction court. First, as previously mentioned, we think that trial counsel's not interrupting to correct the trial judge at the motion for new trial hearing was no doubt due to counsel's experience with such hearings and his realization that it would not have changed the ruling of the trial court. The Petitioner has not met his burden of showing that trial counsel was ineffective for not objecting to the trial court's misstatement of the facts at the motion for new trial hearing or for not including it as an issue in the motion for new trial.

The Petitioner's second and third allegations of ineffective assistance of trial counsel revolve around trial counsel's lack of action after the State failed to provide the Petitioner with a written statement of Ms. Samuels, which the Petitioner maintains must have existed based on trial counsel's and the Petitioner's evidentiary hearing testimony. However, from our review of the record in the direct appeal, it appears doubtful that any kind of written statement existed. Moreover, the record reveals that trial counsel took reasonable action to secure any written statement of the witness.

At the beginning of Ms. Samuels' trial testimony, trial counsel requested continuing Jencks material on her, stating that all he had ever received was her preliminary hearing testimony. The prosecutor responded that Ms. Samuels did not make a statement to police and that the only thing the State had was her "prelim."

During direct examination, Ms. Samuels testified that she gave a "partial statement" to police at 201 Poplar on the day of the shooting but was so nervous and upset that she "went into shock[,]" so the police "came out" the next day to talk to her again. On cross-examination, she testified that she "tried [her] best" to give a statement on the night of the shooting, but she was "crying" and "hyperventilating" and "just couldn't talk right then[.]" She believed that the second time she spoke with the police

- 10 -

was approximately two days after the shooting occurred. She was not certain, but thought it also took place on the eleventh floor of 201 Poplar. When asked if anyone typed her statement and if she initialed and signed it, she replied that she thought someone was typing as she spoke. She also said she had a memory of "signing something" but no memory of initialing anything.

At the conclusion of her testimony, trial counsel requested a bench conference, during which he expressed, "for the record," his confidence that the prosecutors had given him everything they had on the witness. He also said, however, that he thought there was "a possibility that there [was] another written statement out there somewhere." Trial counsel, therefore, requested that the trial court instruct the witness that she was still under subpoena and that she leave a contact number so that counsel could recall her if "another statement somewhere" turned up after their inquiries in the matter.

A subsequent state witness, Cartrevion Chapman, mentioned during his cross-examination testimony that when he and Ms. Samuels were downtown waiting to be interviewed on the night of the shooting, Ms. Samuels had a "real bad" "asthma attack" that was brought on by the fact that "she was so upset and riled up." Mr. Chapman claimed, in fact, that Ms. Samuels was in such dire straits that he "had to give her mouth to mouth CPR to help her breathe."

We have been unable to find any further mention of any statement of Ms. Samuels in the trial transcript. We think it likely, therefore, that trial counsel was correct in his memory that he confused the witness during his vigorous cross-examination. Given her equivocal testimony about her second interview with the police a day or two after the shooting, and trial counsel's reference during the bench conference to inquiries into whether there was "another statement" in existence, it seems fairly clear that the only "statement" in the possession of the State, which it provided to trial counsel, was the witness's preliminary hearing testimony. In any event, trial counsel took appropriate steps to obtain the statement, if any existed. The Petitioner has not met his burden of showing that trial counsel was ineffective with respect to his handling of this matter.

## B. Appellate Counsel

The Petitioner contends that appellate counsel was deficient in his performance, thereby prejudicing his case, by not raising on direct appeal the issue of the trial court's having confused the facts in the motion for new trial hearing, for not including the transcript of the motion for new trial or the complete motion for new trial in the appellate record, for not including the transcript of the suppression hearing in the appellate record, and for failing to properly preserve for appeal the issues related to the admission of the Petitioner's recorded jail conversation with his sister and the State's witness's testimony

about the presence of the victim's children at the time of the shooting. The State responds by arguing that the Petitioner has not established that any prejudice resulted from any of appellate counsel's alleged deficiencies.

As an initial matter, we note from our review of the record in the direct appeal that one or more of the pages of the Petitioner's motion for new trial was inadvertently left out of the technical record when it was assembled by the court clerk. Page 48 of the technical record, entitled "Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial," lists issues one through three and is followed by page 49, which lists issues twelve through thirteen. The issues that this court found to be waived for failure to be included in the motion for new trial were apparently on the missing page or pages. The transcript of the motion for new trial was also not included in the record in the direct appeal. Appellate counsel cannot be found at fault for the copying error that resulted in pages missing from the technical record. Appellate counsel could, however, have requested either that the record be supplemented with the missing pages or filed a petition to rehear with supplementation of the record.

Regardless, we agree with the State that the Petitioner cannot show that any of appellate counsel's alleged deficiencies prejudiced the outcome of his appeal. At the suppression hearing, two eyewitnesses to the shooting, April Bowman and Willie Bobo, testified regarding what they witnessed at the scene and their subsequent identifications of the Petitioner as the perpetrator during photographic lineup procedures that took place on the same night as the shooting. Each testified that he or she was familiar with the Petitioner and immediately identified him during the photographic lineup procedure. Ms. Bowman testified that she had previously had sexual intercourse with the Petitioner, and Mr. Bobo testified that the Petitioner was a distant cousin. At the conclusion of the hearing, the trial court found that the photographic lineup was "a little suggestive" because the lighting in the Petitioner's photograph was "a little different" but that all of the Biggers factors weighed in favor of the reliability of the identifications. We can discern no error in the trial court's ruling. The Petitioner cannot show that he would have been successful on this issue had it been considered by this court on direct appeal.

The Petitioner also cannot show any likelihood of success on the impeachment issue or the issue regarding testimony about the presence of the victim's children. With respect to the impeachment issue, the trial court had the tape redacted to eliminate portions that were not relevant to the credibility of the witness. The court also issued a curative instruction to the jury that it was to consider the telephone call only as it related to the issue of whether or not the witness was being truthful in her trial testimony and not as substantive evidence. With respect to the allegedly prejudicial testimony about the presence of the victim's children, the trial court specifically found that the evidence was not prejudicial. We also note that it occupied only a very small portion of a fairly lengthy

trial in which several eyewitnesses identified the Petitioner as the man who shot the victim. The Petitioner is not entitled to post-conviction relief on the basis of these claims.

### III. Denial of Due Process

Lastly, the Petitioner contends that he has not received due process of law because the State has still not provided him with the written statement of Ms. Samuels. The Petitioner cites trial counsel's evidentiary hearing testimony in support for his assertion that "[t]he statement clearly existed, and was in the State's custody." The Petitioner argues that "[i]t is fundamentally unfair to have important evidence, such as a written statement from a key eye witness [sic], disappear, without having any information as to what specifically was included in that statement."

As we have previously set out in detail, we disagree that trial counsel's testimony made it clear that a formal written statement ever existed. Trial counsel testified that he reviewed his file only to ascertain what issues he raised in the motion for new trial. Thus, his evidentiary hearing testimony that he received a written statement of Ms. Samuels was based solely on his memory of a long-ago trial. Trial counsel's statements during the trial itself reveal that he was confident that he received everything on the witness that was in the State's possession, which was her preliminary hearing testimony. Although trial counsel thought it possible, based on Ms. Samuels' testimony, that another written statement existed somewhere, none ever turned up. The Petitioner is not, therefore, entitled to post-conviction relief on the basis of this claim.

### CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition.

_____
ALAN E. GLENN, JUDGE